**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EXPRO AMERICAS, LLC,** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:25-CV-1632** |
| **OILFIELD SERVICE** | § | |
| **PROFESSIONALS, LLC,** | § | |
| **JASEN GAST,** | § | |
| **BRAD GROESBECK,** | § | |
| **BLAKE ARABIE, and** | § | |
| **SCOTTY VERRET** | § | |
| ***Defendants*** | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO ADD NEW PLAINTIFFS AND REQUEST FOR EXPEDITED HEARING**

Defendants Oilfield Service Professionals, LLC, Jasen Gast, Brad Groesbeck, Blake Arabie, and Scotty Verret (collectively, "Defendants") file this Response to Plaintiff Expro Americas, LLC's ("Expro") Motion for Leave to Add New Plaintiffs (ECF No. 146)(the "Motion"), respectfully requests an expedited hearing prior to December 4, 2026, and would show as follows:

## I. NATURE & STAGE OF PROCEEDINGS

1. Expro represented in two federal Complaints that "Expro is the owner" of the claims in this lawsuit. Over one year after the joinder deadline, Expro now withdraws those representations and seeks leave to add two new Plaintiffs to this lawsuit.

2. This lawsuit has been pending since April 9, 2025 (19 months). ECF No. 1. Expro amended its lawsuit on July 28, 2025, to add the four individual defendants. ECF Nos. 29 and 31. The deadline to join parties and amend pleadings was October 3, 2025 (13 months ago). ECF No.

35. The Second Amended Scheduling Order confirms that the pleading amendment and joinder deadlines have "PASSED" and requires good cause for any later amendment. ECF No. 137.

3. Expro's expert reports were served on October 30, 2026. Defendants' rebuttal expert reports are due December 4, 2026. *Id*. Discovery closes on January 22, 2027 and dispositive motions are due a week later. *Id*. Expro's corporate representative is tentatively scheduled for deposition on December 4, 2026 and Defendants' depositions are scheduled the following week.

4. Nonetheless, Expro files a Motion for Leave to add two new plaintiffs, 13 months after the joinder and amendment deadline, 19 months into this case, two months before discovery closes, 11 days before Defendants' rebuttal expert designations are due, 11 days before Expro is tentatively scheduled to be deposed. This year-late attempt to join new Plaintiffs to this lawsuit is highly prejudicial.

## II. SUMMARY OF ARGUMENT

5. Expro's Motion does not seek leave because it sued the wrong entity. Expro seeks leave because *it is the wrong entity*. 19 months into this case, Expro seeks to add two new plaintiffs: Frank's International, LLC ("Frank's") and Blackhawk Specialty Tools LLC ("Blackhawk")—13 months after the joinder deadline, after opening expert reports, and 11 days before Defendants' rebuttal reports are due. ECF No. 146 at 2–4. Its only explanation is that it just noticed from a review of Expro's own records that it filed a federal lawsuit for the wrong Plaintiff. This is not new information. This is not newly discovered evidence. It's an admitted lack of diligence about the most fundamental aspect of this lawsuit – the identity of the Plaintiff itself.

6. The reason for the change is apparent from Expro's own redline. Expro has previously pled in two Complaints that the trade secrets, the Blackhawk trademark and the individual Defendants' restrictive covenants passed to Expro through a 2021 merger. *See generally*

ECF No. 1; ECF No. 29 ("FAC"). The proposed Second Amended Complaint now deletes those allegations, adds two new Plaintiffs, and labels all three companies "Expro," while the Motion concedes that Frank's and Blackhawk "still operate as distinct legal entities." ECF No. 146 at 3; *id*. at Ex. A, Proposed Second Am. Compl. ("Proposed SAC"), ¶¶ 18, 26, 60, 79, 83–84, 91–92. In other words, Expro has spent the last 19 months in federal court suing over rights it never held.

7. Because the joinder and pleadings amendment deadlines expired over 13 months ago, Rule 16(b)(4)'s good-cause standard governs—not the Rule 15(a) or Rule 20 standards Expro's Motion relies on. Because Expro cannot show good cause, it has attempted to skip the Rule 16 analysis. The Court should deny leave and, given the December 4 rebuttal deadline and upcoming depositions, set an expedited hearing or protect that deadline in the interim. Deadlines do not become optional because Expro failed to realize it did not possess the rights upon which its lawsuit is based.

## II. FACTUAL BACKGROUND

8. Expro filed suit on April 9, 2025. ECF No. 146 at 3. Its First Amended Complaint asserts eleven causes of action, all in Expro's own name:

- Misappropriation of trade secrets under the DTSA (Count I) and TUTSA (Count II);
- Breach of contract for confidentiality (Count III), non-solicitation (Count IV), and non-competition (Count V) obligations;
- Unjust enrichment (Count VI);
- Tortious interference (Count VII);
- Breach of fiduciary duty (Count VIII);
- Aiding and abetting breach of fiduciary duty (Count IX);
- Civil conspiracy (Count X); and
- Trademark infringement (Count XI).

FAC ¶¶ 65–142. Expro's representations about its claims are clearly stated in its Complaints. It alleged: (a) the trade secrets at issue are "Expro's valuable trade secrets;" (b) that Expro is "the owner of the valid Blackhawk trademark;" (c) "Ownership of the Blackhawk trademark was

transferred to Expro during the merger;" and (d) the individual Defendants' contractual duties to Frank's and Blackhawk "remained when Frank's merged with Expro." *Id.* ¶¶ 60, 66, 83–84, 91–92, 138. Expro was clearly aware of Frank's and Blackhawk because the FAC specifically identified them by name, described the employees' agreements with them, and attributed the rights to those claims to Expro via transfer of their rights to acquisitions and the 2021 merger. *Id.* ¶¶ 1, 18, 25–30, 59–60, 79.

9. The Court set October 3, 2025 as the deadline to amend pleadings and to join parties. ECF No. 35 at 1. Prior to that deadline, Expro amended to add the individual defendants, but did not add Frank's or Blackhawk. ECF Nos. 29, 31, 36.

10. The Court's September 23, 2026 Second Amended Scheduling Order indicates that both deadlines are "PASSED" and would only permit amendment upon a "showing [of] good cause." ECF No. 137 at 1. The Second Amended Scheduling Order set the deadline for Expro's expert reports as October 30, 2026 and Defendants' rebuttal reports as December 4. *Id.* Discovery closes January 22, 2027, and the dispositive motion deadline is January 29, 2027. *Id.* at 1–2.

11. On November 20, 2026, Expro's counsel circulated the proposed Second Amended Complaint. **Exhibit 1**, Meet and Confer Email. Defendants stated they were opposed but proposed postponing depositions and adjusting the schedule pending a ruling. *Id.* The next day—<u>416 days after the pleadings and joinder deadline and 593 days after this lawsuit was filed</u>—Expro moved for leave to add Frank's and Blackhawk as plaintiffs. ECF No. 146. Its explanation is as follows:

> ***[a]s part of experts reports and deposition preparation for the corporate representative, it was discovered that certain documents bear the names of Frank's and Blackhawk***. . . . These financial documents under the names of Frank's and Blackhawk could impact the analysis of lost profits. Promptly after learning of the facts permitting the joinder of Frank's and Blackhawk, Expro Americas is filing this Motion . . . .

*Id*. at 2 (emphasis added). In the same breath, Expro's Motion admits it has produced Frank's and Blackhawk's records "throughout the litigation" and concedes Blackhawk and Frank's are "distinct legal entities" from Expro. *Id*. at 3. Expro's supposed realization that it does not own the rights over which it sues occurred by review of Expro's own document production, not through Defendants' production or new information. Expro did not just discover these documents; it admittedly had them all along and simply did not notice until it prepared its expert reports and depositions.

12. The proposed SAC withdraws the specific allegations that the Blackhawk trademark passed to Frank's and then Expro through merger and replaces merger-based allegations concerning contractual obligations with "through corporate restructurings." Proposed SAC. ¶¶ 18, 26, 60, 79, 83–84, 91–92. Specifically, the Proposed SAC:

- Deletes the allegation that Blackhawk was acquired by Frank's, that ownership of the trademark transferred to Frank's, and that "Expro merged with Frank's International in 2021" (ECF No. 146-1, ¶ 18);
- Deletes that "[o]wnership of the Blackhawk trademark was transferred to Expro during the merger" (*id.* ¶ 60);
- Strikes all allegations that the confidentiality, non-solicitation, and non-competition obligations passed to Expro when Frank's acquired Blackhawk and merged with Expro, substituting "through corporate restructurings" (*id.* ¶¶ 79, 83–84, 91–92);
- Redefines "Expro" to mean all three entities collectively, so that the trademark count alleges that "Expro" owns a mark registered to Blackhawk alone (*id.* at 1, ¶ 138); and
- Changes Expro Americas from a "Texas" limited liability company to a "Delaware" limited liability company (*id.* ¶ 8).

13. The Motion's remaining assurances—that OSP had notice that Frank's and Blackhawk were "relevant," and that no depositions have occurred—miss the point entirely. ECF No. 146 at 3–4. There remains no explanation of what rights non-parties Frank's and Blackhawk hold, what rights Expro holds, or why all three distinct legal entities can assert the same claims.

Despite this proposed foundational change in the lawsuit, Expro demands the existing schedule, including rebuttal expert reports and depositions, should not be altered at all. *Id.* at 4.

## III. ARGUMENT & AUTHORITIES

14. When a scheduling order's deadline for amendments or joinder has expired, Federal Rule of Civil Procedure 16 governs first: "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The movant must show that the deadline could not reasonably have been met *despite its diligence*. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003) (emphasis added). To determine whether the movant has demonstrated good cause, the Court considers: (1) the explanation for the failure to move timely; (2) the importance of the amendment; (3) potential prejudice from allowing it; and (4) the availability of a continuance to cure prejudice. *Id.* at 536. The movant must establish good cause before Rule 15's more liberal standard applies. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

15. Under Rule 15, a party who cannot amend as a matter of course may amend only with the opposing party's consent or by leave of court. FED. R. CIV. P. 15(b)(a)(2). "Leave to amend is in no way automatic" under Rule 15. *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Thus, the Court should consider the movant's undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies through prior amendments, undue prejudice to the opposing party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Both requirements apply. *S&W*, 315 F. 3d 533, 536 ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule

15(a) apply to the district court's decision to grant or deny leave."). Accordingly, a late request to add plaintiffs must satisfy Rule 16's threshold before Rules 15 applies. *Id*. Expro cannot do so and therefore attempts to end-run the good cause analysis.

**A. Expro Motion overlooks Rule 16's good cause requirement and its own admissions defeat good cause.**

16. Expro moves for leave to add plaintiffs under Rules 15 and 20 and never mentions the rule that controls its motion. Rule 16(b)(4) is the threshold analysis before the Court reaches Rule 15. *Fahim*, 551 F.3d at 348. The Scheduling Orders set October 3, 2025 as the pleading amendment and joinder deadline, lists the deadline as "PASSED," and states any party seeking to join parties must show good cause. ECF No. 35 at 1; ECF No. 137 at 1. Expro acknowledges the expired deadline but offers only assurances that it seeks justice and did not act in bad faith. ECF No. 146 at 3. This is not the standard. Absence of bad faith is not proof of diligence or good cause. Measured against the four good-cause factors, Expro's showing fails on each.

*i. Factor 1: Good cause requires an explanation for the delay; Expro offers none.*

17. Expro's only explanation for a 13-month delay in adding new plaintiffs is that it just learned from reviewing its own documents that it filed a lawsuit on behalf of the wrong Plaintiff. Specifically, Expro contends it just learned "facts" supporting Frank's and Blackhawk's joinder during expert and deposition preparation. ECF No. 146 at 3. That is not an explanation; it is an admitted lack of diligence in the most fundamental aspect – the identity of the Plaintiff. Expro argues it identified both companies in its own pleadings and has admittedly produced their records as its own throughout this case. *Id.* at 3–4; FAC ¶¶ 18, 25–30, 59–60, 79. A party cannot "discover" its own corporate structure, its own trademark registrations, its own employment agreements, or its own invoices. This is not a plaintiff learning in discovery of a new claim or unknown wrongdoer

outside its walls. This is Plaintiff realizing it filed a lawsuit for the wrong party. Expro conceding that it just reviewed its own records is not diligence or good cause.

18. *S&W* forecloses any excuse Expro could raise. There, the Texas Supreme Court clarified the requirements of the cause of action, but the plaintiff did not appreciate the decision's significance until six months later. 315 F.3d at 534–36. The plaintiff then moved for leave to add one new claim against the same defendant over three months after the pleadings amendment deadline. *Id.* The Fifth Circuit affirmed denial of leave to amend under Rule 16 because the claim could have been brought originally and the plaintiff offered "effectively no explanation" for the delay. *Id*. at 536. Expro's position is far more attenuated. Expro waited 416 days (four times the delay the Fifth Circuit held fatal in *S&W*) to change the lawsuit in its most fundamental aspect—by adding two new party Plaintiffs.

19. Expro's Motion fails to provide a cogent or defensible explanation for the delay. There is none. Expro provides no date and no reason why it did not review its own records earlier. In an effort to distract from its lack of diligence, Expro alleges that a discovery dispute somehow kept it from reviewing its own documents to determine the right party to bring this lawsuit. ECF No. 146 at 3.

20. Expro's notice argument only underscores its lack of diligence. It simultaneously insists OSP has known Frank's and Blackhawk were "relevant"—not that they should be parties—"at least since the filing of this lawsuit on April 9, 2025." ECF No. 146 at 3. Expro cannot argue that Frank's and Blackhawk were obvious while concurrently claiming they just discovered them. Expro should have investigated and known who the proper Plaintiff was before it filed a lawsuit in federal court. The first factor weighs decisively against leave.

*ii.* *Factor 2: Expro cannot show the amendment is important when its own Motion says otherwise.*

21. Expro's Motion disproves importance of the amendment on its face. In an effort to gloss over this fundamental issue and reframe it as a mere housekeeping matter, Expro says the amendment adds "no new claims," that the changes are "minimal," that Defendants "will not be required to relitigate any issues," and that joinder "would not affect any deadlines." ECF No. 146 at 3–4. Defendants strongly disagree with Expro's position. Nonetheless, an amendment Expro describes as "minimal" is, by definition, not important to the movant.

22. Importance cannot rescue an amendment that ordinary diligence would have made unnecessary. *S&W*, 315 F.3d at 536–37 (affirming denial despite the amendment's significance to the plaintiff's case). Either way, the second factor favors denying leave.

*iii.* *Factor 3: The amendment would severely prejudice Defendants.*

23. An amendment that requires additional discovery is prejudicial. *Id*. at 536. So is one that forces a defendant to meet a changed case too late to prepare. *Smith*, 393 F.3d at 595–96; *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 427 (5th Cir.2004) ("when late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts [of appeals] are less likely to find an abuse of discretion due to the prejudice involved.")(internal quotations omitted). Expro's amendment does both, and the prejudice is a direct product of its delay. Had Expro identified the proper plaintiffs before the October 3, 2025 pleading and joinder deadline, Defendants would have had 15 months of discovery with three plaintiffs, instead of one. Expro's 13-month delay leaves two months of discovery in a lawsuit that has now changed in the most basic respect.

24. The prejudice to Defendants is undeniable. On the eve of depositions and in the middle of expert discovery, Defendants do not know who their accuser is or what rights they

possess. For 19 months, this case has been built the false premise that Expro owns the rights and trade secrets at issue. Expro alleged that it owns the trade secrets, that the Blackhawk mark passed to it through the Frank's merger, and that the individual Defendants' contractual duties remained enforceable by Expro after that merger. FAC ¶¶ 60, 66, 83–84, 91–92, 138. Defendants framed their defenses, served discovery, and retained experts on that premise. The proposed amendment abandons this basis without specifying which plaintiff holds what rights. Proposed SAC ¶¶ 18, 26, 60, 79, 83–84, 91–92. This proposed amendment and addition of parties opens, for the first time, discovery into chain of title for the trademark, the trade secrets and the drawings, and the restrictive covenants; the corporate history among Expro, Frank's, Blackhawk Specialty Tools LLC, Blackhawk Group Holdings, and Expro Group Holdings N.V.; any intercompany assignments or licenses; and each new plaintiff's separate damages. It also raises whether claims asserted for the first time by new parties are barred by limitations. *Id.* ¶¶ 43–45, 93–94. Simply, Expro's federal pleadings were incorrect and now it seeks to walk them back at the eleventh hour.

25. This late shift in the basic underpinnings of the lawsuit puts the defense in a fire drill without knowing the identity of their accusers and what rights they possess. Defendants' rebuttal reports are due December 4, 11 days from the date Expro files its Motion for Leave. ECF No. 137 at 2. Expro's damages expert measures Expro's alleged losses on the acquisition premise the amendment now abandons. Expro Expert Damages Report ¶¶ 3, 5, 15.[1] Expro's own motion concedes that Frank's and Blackhawk's invoices and purchase orders could affect the lost-profits calculation. ECF No. 146 at 2–3. Defendants cannot rebut a lost-profits opinion when Expro itself says the inputs may change based on the entities involved and has not said which company lost what. Rebuttal against a moving target is not possible and highly prejudicial to the defense.

[1] Expro's damages expert, Phillip Brida's, expert report is marked "Confidential – Attorney's Eyes Only" and is thus, not attached to this Response. OSP will produce the damages report for *in camera* review if ordered by the Court.

26. Taking depositions under these circumstances is equally prejudicial. Expro's corporate representative deposition is tentatively set for the same day rebuttal reports are due, and Defendants' depositions are noticed for the following week. ECF No. 146 at 4. Defendants cannot prepare to examine Expro on ownership, contracts, and damages without knowing who its accuser is. What Plaintiff claims to own the rights at issue? Defendants cannot be asked to face their accuser(s) in depositions without knowing who their accuser(s) are more than a few days before the deposition. Expro's promise that its witness will address the other claims of the other Plaintiffs (whoever they may be) does not cure the problem. Proceeding with the current schedule will almost certainly require repeat depositions.

27. Expro created this prejudice by not exercising diligence, and it now asks the Court to make the Defendants absorb the fallout and prejudice at the eleventh hour. The third factor weighs heavily against leave.

*iv.* *Factor 4: A continuance does not salvage Expro's lack of good cause.*

28. A continuance would reward Expro's lack of diligence, but it is the only way to avoid the prejudice described above. Accommodating new plaintiffs would require reopening discovery, supplemental expert reports, and re-sequencing every deposition, all to fix a defect Expro created and could have corrected before the lawsuit was ever filed. Even so, if the Court is inclined to grant leave, additional time is the only means of softening the prejudice to Defendants. Yet the availability of a continuance does not overcome the first three factors. In *S&W*, additional time could have permitted discovery, but the Fifth Circuit affirmed denial of leave to amend where the movant sought leave only 3 months after the scheduling-order deadline, because the facts underlying the amendment were known long before the motion was filed, the explanation for delay was inadequate, and the amendment would require additional discovery. 315 F.3d at 536–37.

Expro waited 13 months (416 days) to seek leave to add new plaintiffs. Because a continuance would cure the prejudice only by rewarding Expro's delay, this factor is at best neutral. The choice is therefore to deny leave or grant leave with a new schedule giving the defense time to discover and defend the new case.

29. Factors 1 through 3 weigh decisively against Expro: (1) Expro offers no explanation for its delay, (2) it disclaims the amendment's importance, and (3) the amendment would severely prejudice Defendants. Expro has not shown good cause, and the Court should deny leave under Rule 16(b)(4).[2]

**B. Rule 15 independently bars the amendment because it is unduly delayed, prejudicial, and futile.**

30. Expro recites the *Foman* factors and declares them satisfied. ECF No. 146 at 2–4. But leave under Rule 15 is not automatic. A court may deny leave for undue delay, undue prejudice to the opposing party, or futility. *Foman*, 371 U.S. at 182; *Smith,* 393 F.3d at 595–96. Each ground applies here, and each traces to the same source: Expro built this case on the premise that it has the rights for which it sues. It now concedes this representation is false.

*i. Undue Delay: Expro should have known who possessed the subject rights before it ever filed this lawsuit.*

31. Expro's delay is undue for the reasons set out in Section III.A above. *See supra* ¶¶ 17–20. Expro's only explanation is that it recently reviewed its own records, which it produced months ago. FAC ¶¶ 18, 25–30, 59–60, 79. A party cannot "discover" its own corporate structure and identity, and it cannot blame Defendants' discovery for facts in its own files. *Smith*, 393 F.3d at 595–96 (affirming denial of late amendment where the supporting facts were in the plaintiff's

[2] Alternatively, if the Court grants leave, it should continue the remaining deadlines to give Defendants a fair opportunity to conduct discovery on, and rebut, the new plaintiffs' claims. Defendants also request that Expro reimburse OSP's reasonable and necessary attorneys' fees associated with defending this case against the wrong Plaintiff for the last 19 months. TEX. CIV. PRAC. & REM. CODE § 134A.005.

own documents). Expro waited 416 days, four times the delay the Fifth Circuit held fatal in *S&W*. Expro's delay is its own, and it independently warrants denial under Rule 15.

*ii.* *Undue Prejudice: Expro's amendment changes the case Defendants have spent 19 months defending.*

32. Expro argues there is no prejudice because no depositions have occurred. ECF No. 146 at 4. The Fifth Circuit disagrees where an amendment fundamentally alters the case rather than offering an alternative theory on the same facts. *Mayeaux*, 376 F.3d at 427 (affirming denial of leave to amend where the proposed pleading would have "***fundamentally alter[ed] the nature of the case***" ***by adding different parties and theories after substantial litigation had occurred***, causing undue prejudice to defendants).[3] Expro's amendment does exactly that. It deletes the acquisition-and-merger allegations on which its rights depend, adds the separately surviving entities, and concedes their records could change the damages. ECF No. 146 at 3; Proposed SAC ¶¶ 18, 60, 79. Who is our accuser? Defendants must now determine which company owned each right, who was owed each duty, and who suffered each loss—after opening expert reports and with two months of discovery left.

*iii.* *Futility: Frank's and Blackhawk's claims are time-barred and cannot relate back.*

33. An amendment is futile if the claims it asserts are time-barred and do not relate back. *Whitt v. Stephens County*, 529 F.3d 278, 281–83 (5th Cir. 2008) (affirming denial of leave to add new defendants after limitations ran). Frank's and Blackhawk's claims fall into two groups, and neither survives.

[3] Expro's proposed amendment does not merely assert an alternative legal theory. It reverses its prior allegations that Expro owned or acquired the relevant trade secrets, trademarks, and contractual rights and instead seeks to add new plaintiffs on the theory that Frank's and Blackhawk always possessed those rights. Like the amendment rejected in *Mayeaux*, the proposed pleading would fundamentally alter the nature of the case and require Defendants to defend against materially different ownership and standing theories.

34. First, several claims were already time-barred when Expro filed suit in April 2025, so relation back cannot help them. Relation back moves an amendment to the date of the original pleading; it cannot revive claims that were stale on the date the lawsuit was first filed. FED. R. CIV. P. 15(c)(1). Contract claims carry a four-year limitations period that runs from breach. TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051; *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 707 (Tex.2021). Expro alleges Gast and Groesbeck breached their noncompetition agreements by forming and joining OSP in January 2018, so Count V expired in January 2022. Proposed SAC ¶¶ 93–95. Their non-solicitation restrictions ended in February 2019 and December 2019, so even a breach on the last day expired by February or December 2023 (Count IV). *Id.* ¶¶ 44–45, 83–86.

35. Likewise, the tortious interference claim carries a two-year period and thus expired in May and October 2023 based on Arabie's and Verret's 2021 date of hires (Count VII). *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex.1986). Those claims have been time barred since Expro filed this suit so, relation back does not help the new plaintiffs.

36. Second, the remaining claims expired after April 2025 and survive only if they relate back. Under ordinary accrual, contractual confidentiality and fiduciary-duty claims tied to the 2021 departures expired between April and October 2025 (Counts III and VIII), and unjust-enrichment and interference claims would have expired by July 2026 even if accrual were deferred to Expro's alleged July 2024 discovery (Counts VI and VII). TEX. CIV. PRAC. & REM. CODE §§ 16.004(a), 16.051; *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410–11 (5th Cir. 2004)( two-year limitations for unjust enrichment and four-year limitations for contracts); Proposed SAC ¶ 51. Every one of those dates falls before Expro's November 23, 2026 motion for leave. Frank's and Blackhawk therefore need Rule 15(c)'s relation back doctrine.

37. They cannot satisfy it. Rule 15(c)(1)(B)'s same-transaction test governs new *claims* by existing parties; an amendment that changes the *party* must also satisfy Rule 15(c)(1)(C). FED. R. CIV. P. 15(c)(1)(B)–(C). Although that subsection speaks of parties brought in against whom a claim is asserted, the 1966 Advisory Committee Notes extend the same principles to amendments that change plaintiffs. FED. R. CIV. P. 15 advisory committee's note to 1966 amendment. The key requirement is notice of a *mistake*: the defendant must have or should have known that, but for a mistake concerning the proper plaintiff's identity, the action would have been brought by the new party. FED. R. CIV. P. 15(c)(1)(C)(ii).

38. Defendants had no notice that Expro did not have the rights over which it sued. In fact, Expro unequivocally alleged the opposite—that the trade secrets, the Blackhawk trademark, and individual defendants' restrictive covenants passed to Expro through acquisition and merger. FAC ¶¶ 60, 66, 83–84, 91–92, 138. Nothing in Expro's federal pleadings or Motion for Leave suggest a mistake. Expro made a deliberate choice about which entity owned its rights and prosecuted this lawsuit for that party for 19 months.

39. Because the first group of claims was time barred before suit and the second cannot relate back, any amendment is futile as to Frank's and Blackhawk. Combined with Expro's unexplained delay and the prejudice to Defendants, Rule 15 independently requires denial.

**C. Defendants' Reservation of Rights to Recover Fees and Costs.**

40. Defendants have now spent 19 months defending claims brought by the wrong entity. Defendants give notice that they will seek their attorneys' fees and costs at the appropriate time under each available basis, including but not limited to Tex. Civ. Prac. & Rem. Code § 134A.005, and the Court's inherent authority. At minimum, if the Court is inclined to grant any

relief to Expro, Defendants request that it be conditioned on Expro bearing the fees and costs that the improperly constituted lawsuit has caused Defendants to incur to date.

## IV. PRAYER

Defendants respectfully request that the Court:

1. Deny Plaintiff's Motion for Leave to Amend to Add Plaintiffs (ECF No. 146);

2. Stay the depositions currently noticed for December 4, 2026 and the week of December 7, 2026 pending the Court's ruling, as requested in Defendants' forthcoming Motion for Protective Order;

3. Alternatively, if leave is granted, (a) postpone all depositions until at least 14 days after the Court's ruling; (b) extend the expert, discovery, and dispositive-motion deadlines; (c) reopen discovery as to the new plaintiffs, including chain of title, corporate history, and damages, and permit supplemental expert reports; (d) require each plaintiff entity to designate a Rule 30(b)(6) witness; (e) order Expro to bear the fees and costs Defendants incur as a result of the amendment; and (f) make written findings on the ownership allegations Expro has withdrawn; and

4. Grant Defendants such other relief to which they may be justly entitled.

Dated: November 25, 2026

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

/s/ Emma Perez McKellar

Adam Green
Federal ID No. 29707
Texas Bar No. 24027191
Rick Gregory
Federal ID No. 3952772
Texas Bar No. 24085843
Emma Perez McKellar
Federal ID No. 3862870
Texas Bar No. 24137992
agreen@bakerdonelson.com
rgregory@bakerdonelson.com
emckellar@bakerdonelson.com
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, a true and correct copy of the foregoing was served on all counsel of record via the ECF filing system pursuant to the Federal Rules of Civil Procedure.

/s/ Emma Perez McKellar
Emma Perez McKellar